# FERGUSON *v.* UNITED PARCEL SERVICE

[No. 130, September Term, 1973.]

*Decided November 6, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, McWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*Philip J. Tierney,* General Counsel, Maryland Commission on Human Relations, with whom was *Jacob J. Edelman* on the brief, for appellant.

*Robert B. Barnhouse,* with whom were *Michael Esher Yaggy* and *Piper & Marbury* on the brief, for appellee.

*Amicus Curiae* brief filed by United States Equal Employment Opportunity Commission, *William A. Carey, General Counsel; Joseph T. Eddins, Associate General Counsel; Beatrice Rosenberg, Charles Reischel, Lutz A. Prager* and *Debra Millenson* on the brief.

SINGLEY, J., delivered the opinion of the Court.

This is an appeal from the order of the Circuit Court for Prince George's County (Ralph W. Powers, C. J.) which had reversed orders entered by Maryland's Commission on Human Relations (the Commission).

The case had its genesis in March of 1970 when Ferguson filed with the Commission a complaint alleging that United Parcel Service (United Parcel) had discriminated against him because of his race when it failed to employ him as a loader-unloader at its Landover, Maryland distribution center. After three interviews with United Parcel, which were unproductive, Ferguson filed his complaint:

> "I would like to file a complaint against the United Parcel Service Co., of Landover, Md., for discrimination, because of my race or color. I filed an application with this company for employment but was not hired. The application was made in December of 1969. I have had three different interviews in the past three months and was still turned down by them. I have even talked to the supervisor of personnel. The personnel manager told me Tuesday that he would talk to the interviewer about my application. The last time, I was interviewed was March the 16th and I was turned down again. The last time I was interviewed for the third time, I was told my chances of being hired were as good as anyone else who was being interviewed. So if my chances are that good, why do their interviewers still turn me down for employment at this company."

It would seem that the Commission regarded Ferguson's

complaint as coming within the ambit of § 12 (a) of Art. 49B, Maryland Code (1957, 1972 Repl. Vol.) (the Act):

> "Any person claiming to be aggrieved by an alleged discrimination prohibited by any section of this article may make, sign and file with the Human Relations Commission (hereinafter referred to as the 'Commission') a complaint in writing under oath. The complaint shall state the name and address of the person, firm, association, partnership, corporation, State agency, department or board alleged to have committed the act of discrimination together with the particulars thereof; and the complaint also shall contain such other information as may be required from time to time by the Commission.[1]

The conclusion is buttressed by the fact that United Parcel was given notice of a public hearing on Ferguson's complaint, as provided by § 14(a) of the Act:

> "The chairman shall cause a written notice to be issued and served in the name of the Commission together with a copy of the complaint requiring the respondent to answer the charges of the complaint at a public hearing . . . ."[2]

The Commission's hearing tribunal concluded that "[t]here [was] no evidence that Ferguson was not hired because of particular individual discrimination against him because of his race," but rather that Ferguson was not employed because of the criteria imposed by United Parcel in filling the job of loader-unloader, criteria which the Commission thought bore no relation to job performance and tended to exclude blacks from employment.

---

1. Section 12 (a) was subsequently amended, effective July 1, 1973, an amendment which is of no relevance here, Code (1957, 1973 Supp.) Art. 49B, § 12 (a).

2. Section 14 (a) was amended, effective July 1, 1972, again an amendment which is of no relevance here, Code (1957, 1973 Supp.) Art. 49B, § 14 (a).

The Commission entered an order from which the following is an excerpt:

"[United Parcel] is ordered to remove from its application forms for the loader-unloader job (or to direct applicants not to complete those portions of the forms containing) questions relating to completion of high school education, arrests, convictions, home ownership or rental, tardiness in making time payments, wage assignments or garnishments, repossessions, refusal of bond, suits for non-payment, bankruptcy, refusal of credit, current tardiness in time payments or loans, and driving records. Questions pertaining to past employment shall be limited to the immediately preceding employment, or to employment involving elements (such as physical stamina) pertinent to the loader-unloader job."

There was a further direction that United Parcel pay Ferguson one week's back pay of $150.00. The finding as regards this part of the order was as follows:

"The extent of the loss actually caused by discrimination, however, must necessarily be slight. [United Parcel] customarily checked out application information after hiring. Had it done so in Ferguson's case, it would have discovered the falsehoods he had recounted, and no doubt would have fired him, and justifiably so; see statement pertaining to misrepresentation of facts in the application form . . . .

"We think Ferguson is entitled to some back pay, but cannot find, on this record, entitlement for more than a week. In January, 1970, the loader-unloader pay was $3.75 per hour, or $30 per eight hour day. For a five-day work week, this would amount to $150.00. We direct [United Parcel] to pay Ferguson $150 in back pay."

On appeal to the circuit court, the Commission's order was

reversed for what we believe to be two reasons so compelling that it is unnecessary to consider the other points raised by United Parcel. It will be remembered that the case came on for hearing on Ferguson's complaint, filed under § 12 (a) of the Act. Having found that there was no discrimination against Ferguson personally, the Commission went on to issue a wide-ranging order, designed to reform what it regarded as United Parcel's discriminatory employment practices.

United Parcel argues that this violated a basic tenet of fair play in administrative proceedings, *Hyson v. Montgomery County Council*, 242 Md. 55, 69, 217 A. 2d 578, 587 (1966), the right of a party to be given adequate notice of the nature of the proceeding, *Cassidy v. Baltimore County Bd. of Appeals*, 218 Md. 418, 421-22, 146 A. 2d 896, 898 (1958); *Albert v. Public Serv. Comm'n*, 209 Md. 27, 37-38, 120 A. 2d 346, 351 (1956), in order that he may prepare his defense, *Board of Medical Examiners v. Buck, [In re Buck's License,]* 232 P. 2d 791, 802 (1951), 200 Ore. 488, 258 P. 2d 124 (1953), *appeal dismissed*, 346 U. S. 919 (1954); Davis, Administrative Law Text § 8.02, at 196 (3d ed. 1972). *See* Code (1957, 1971 Repl. Vol.) Art. 41, § 251 (Administrative Procedure Act).[3] *See also Von Lusch v. Board of County Comm'rs*, 268 Md. 445, 302 A. 2d 4 (1973), and *Rasnake v. Board of County Comm'rs*, 268 Md. 295, 300 A. 2d 651 (1973), dealing with notice in the context of zoning law.

As the lower court pointed out, § 12 (b) of the Act provides the mechanism which the Commission should have used, once it determined to broaden the scope of the inquiry — the issuance of a complaint on its own motion and in its own name, which would have given United Parcel the notice to which it was entitled.

---

3. "In any contested case, all parties shall be afforded an opportunity for hearing after reasonable notice. The notice shall state the time, place and issues involved, but if, by reason of the nature of the proceeding, the issues cannot be fully stated in advance of the hearing, or if subsequent amendment of the issues is necessary, they shall be fully stated as soon as practicable, and opportunity shall be afforded all parties to present evidence and argument with respect thereto."

The award of back pay to Ferguson is an anomaly, which the court below found to be "unsupported by competent material and substantial evidence," a finding which we shall not disturb, Maryland Rule 886. The Commission conceded that had Ferguson been employed, United Parcel would have been justified in discharging him once it discovered that his application contained representations that were false. The Commission theorized that it would have taken a week for United Parcel to uncover the falsehoods, and that Ferguson was entitled to be paid for this period. That Ferguson would have been employed even had the procedurally infirm employment standards been applicable might well be a matter of conjecture, and there is certainly no support for the notion that if employed, his employment would have lasted a week. As the lower court noted, the determination of the Commission, "[i]n arbitrarily choosing this amount to award Ferguson . . . appears to be no more than a guess and a desire to make a nominal award."

*Order affirmed, costs to be paid by the Human Relations Commission.*